
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JAY LEON COCHRAN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:07-CV-0068 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION TO DENY
RESPONDENT QUARTERMAN'S MOTION TO DISMISS
PURSUANT TO 28 U.S.C. § 2244(d)**

Came for consideration the January 23, 2008 motion to dismiss filed by respondent, seeking dismissal of the Petition for Writ of Habeas Corpus filed by petitioner JAY LEON COCHRAN as time-barred. An evidentiary hearing was held July 8, 2008. Counsel for both parties and petitioner were present. The evidence does not show petitioner was aware of, or through the exercise of due diligence could have discovered, the factual basis of his claims on or before July 2006. While there is evidence petitioner was aware, prior to July 2006, of discrepancies in the sentence he understood he had received, it was not until July 2006 that petitioner was provided and/or had access to sufficient information to put him on notice that he had a viable, non-frivolous claim to pursue. Therefore, it is the opinion of the undersigned United States Magistrate Judge that respondent's motion to dismiss should be DENIED.

HAB54\R&R\COCHRAN-68.SOLMTN-DNY:2

# I.
## STATE COURT CONVICTIONS AND PROCEDURAL HISTORY

On January 18, 2001, in the 108th Judicial District Court of Potter County, Texas, petitioner was indicted for the offense of delivery of marijuana in a drug free zone, said offense alleged to have occurred on October 17, 2000. *State v. Cochran*, No. 43,312. On May 17, 2001, in the 108th Judicial District Court of Potter County, Texas, petitioner was indicted for the offense of delivery of marijuana in a drug free, said offense alleged to have occurred on August 25, 2000. *State v. Cochran*, No. 43,798. On December 17, 2001, pursuant to a plea bargain agreement, petitioner entered pleas of guilty to both offenses. The state trial court accepted petitioner's guilty pleas and adjudicated petitioner guilty of the charged offenses. After the determination of guilt, the following exchange occurred:

| | |
|---|---|
| The Court: | Mr. Cochran, having found you guilty of the felony offense of delivery in Cause Number 43,798, it will be the sentence of the Court that you be confined in the prison system of the State of Texas for a period of 5 years. And having found you guilty of the felony offense of delivery of marijuana in a drug-free zone, it will be the sentence of the Court that you be confined in that matter – or in that cause for a period of 10 years in the Texas Department of Criminal Justice, Institutional Division. I assume these will run concurrent. Counsel? |
| The State: | Your Honor, by law they must run consecutive. |
| The Court: | Consecutive? |
| The State: | That's correct, Your Honor. |
| The Court: | All right. So ordered. Good luck to you Mr. Cochran. |
| Petitioner: | Thank you, sir. |

Petitioner's punishment was then assessed at ten (10) years and five (5) years imprisonment in the Texas Department of Criminal Justice, Institutional Division (TDCJ-CID), said sentences to run

consecutively.

Petitioner did not appeal either of the convictions or sentences, but on May 26, 2004, filed state applications for writs of habeas corpus challenging the convictions and sentences. *Ex parte Cochran*, Cause Nos. 59,570-01, -02. In these state applications, petitioner asserted allegations of ineffective assistance of counsel, that his plea was not voluntarily made, and that his sentences should be concurrent, not consecutive. The Texas Court of Criminal Appeals construed petitioner's state habeas arguments as follows:

> [Petitioner] contends that he received ineffective assistance of counsel, his guilty pleas were involuntary, and his sentences are illegal. Specifically, [petitioner] contends that counsel promised him that his sentences would be concurrent and that he would be released on parole in no more than a year and a half, yet his sentences are consecutive and he has not been released on parole. [Petitioner] also contends that counsel failed to investigate and determine that the locations of these offenses were not within drug free zones. [Petitioner] contends that the trial court improperly cumulated his sentences, and that his guilty pleas were involuntary due to the incorrect information provided to him by counsel and the fact that his sentences were cumulative.

On February 16, 2005, the Texas Court of Criminal Appeals, finding petitioner had alleged facts which, if true, might entitle him to relief, remanded both cases to the trial court for the development of additional facts. The trial court was ordered to make findings of fact as to whether petitioner received ineffective assistance from his counsel, whether his guilty pleas were voluntarily entered, and whether the sentences for these offenses were properly cumulated.

On April 27, 2005, trial counsel submitted an affidavit to the state trial court wherein he stated:

> [Petitioner] alleges that I promised him that his sentences would be concurrent. After three and one-half years, I do not have any independent recollection of discussing concurrent or consecutive sentences with [petitioner]. I am sure, however, that in December 2001, I was aware of Section 481.134(h) imposing a consecutive sentence for Drug Free Zone offenses.

[Petitioner] alleges that I promised him that he would be released on parole in no more than a year and a half. I have never had any idea how much time would be required to discharge a sentence. I would never speculate when the parole board would release an inmate and I cannot imagine telling [petitioner] when he would get out.

[Petitioner] alleges that I failed to investigate whether the location involved was in a drug free zone. One of [petitioner's] offenses occurred in the parking lot of Ross Rogers golf course. More specifically the east part of the parking lot. I do remember going to Ross Rogers and stepping off the distance from Thompson Park to the parking lot. I do not recall the distance, but I do remember being satisfied that the offense occurred within 1000 feet of the park.

On July 20, 2005, the trial court entered the following findings of fact:

1.   [T]rial counsel did not promise [petitioner] that his sentences in Cause Nos. 43,312-E and 43,798-E would be concurrent.

2.   [T]rial counsel did not advise [petitioner] that he would be released on parole in no more than a year and a half.

3.   [T]rial counsel conducted a sufficient independent investigation to determine that the locations of the alleged offenses were within drug free zones.

4.   [Petitioner's] guilty pleas in Cause Nos. 43,312-E and 43,798-E were not involuntary.

5.   [Petitioner's] sentences in Cause Nos. 43,312-E and 43,798-E were properly cumulated.

6.   [Petitioner's] trial counsel rendered effective assistance of counsel.

On September 14, 2005, the Texas Court of Criminal Appeals denied petitioner's habeas applications without written order based on the findings of the trial court without a hearing.[1]

On February 2, 2007, petitioner filed two more state habeas applications alleging his plea was involuntary because he was not properly admonished by the trial court that his sentences would

_____

[1]This decision notwithstanding, it now appears, based upon a subsequent decision by the Texas Court of Criminal Appeals, that the sentence may not have been mandated to be consecutive. *See Williams v. State*, 253 S.W.3d 673 (Tex.Crim.App. May 14, 2008).

be consecutive, and that the trial court's order that the sentences be cumulative was improper. *Ex parte Cochran*, Cause Nos. 59,570-03, -04. On March 28, 2007, the Texas Court of Criminal Appeals dismissed these applications as subsequent applications without reaching the merits.

On April 10, 2007, petitioner filed with this Court, the instant federal petition for a writ of habeas corpus.[2] On January 23, 2008, respondent filed a motion to dismiss petitioner's federal habeas application with prejudice pursuant to 28 U.S.C. § 2244(d). On February 6, 2008, petitioner filed a response in opposition to respondent's motion.

II.
PETITIONER'S CLAIMS

Certain claims petitioner raises in the instant habeas application involve the issue of whether petitioner's consecutive sentences are proper. Although the merits of such claims are not directly relevant to the limitations question, the date when he became aware of such claims is intertwined with the limitations issue. Consequently, petitioner's claims before this Court are set forth below:

1. Petitioner's plea was involuntary because the state trial court:

    a. admonished petitioner under the wrong sentencing range, and entered a sentence that was not within the appropriate sentencing range; and

    b. did not fully admonish petitioner that the sentences he would receive as a result of his guilty plea would run consecutively.

2. The state trial court's cumulation order in the judgment in Cause No. 43,798-E directing petitioner's 5-year sentence run consecutive to his 10-year sentence in Cause No. 43,312-E is improper in that it does not meet the requirements of state statute; and

3. Petitioner's trial counsel was ineffective for erroneously advising him:

    a. as to the range of punishment; and

_____

[2]*See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

b.       that his sentences would be calculated concurrently.[3]

## III.
## TIMELINESS OF PETITIONER'S HABEAS APPLICATION

Title 28 U.S.C. § 2244(d)(1) establishes a one-year limitation period in which to file an

application for a federal writ of habeas corpus by a person in custody pursuant to a state court

judgment.  That subsection provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus
> by a person in custody pursuant to the judgment of a State court.  The limitation
> period shall run from the latest of –

> (A)      the date on which the judgment became final by the conclusion of direct
>          review or the expiration of the time for seeking such review;

> (B)      the date on which the impediment to filing an application created by State
>          action in violation of the Constitution or laws of the United States is
>          removed, if the applicant was prevented from filing by such State action;

> (C)      the date on which the constitutional right asserted was initially recognized by
>          the Supreme Court, if the right has been newly recognized by the Supreme
>          Court and made retroactively applicable to cases on collateral review; or

---

[3]In his application, under the subtitle "Incomplete Admonishment and Improper Cumulation Order," petitioner stated:

> Petitioner further argues that at the time of his plea bargaining hearing he was advised by his trial attorney
> that he could receive a stiffer sentence and that the plea bargain called for concurrent sentencing.  Petitioner
> contends that his attorney gave him erroneous advise as to the range of punishment and stacking of the
> sentences, which was further compounded by the trial court when it gave him, the defendant, an incomplete
> and faulty admonishment concerning the direct consequences of the plea.  (Citations omitted).

On June 12, 2007, this Court ordered petitioner to supplement his petition.  On June 28, 2007 and July 19, 2007, petitioner filed
supplemental pleadings in support of his petition.  On November 20, 2007, petitioner filed a "Motion for Leave to File an
Amended Complaint,"filed prior to any responsive pleading by respondent, which this Court construed as another supplemental
pleading in response to the Court's June 12, 2007 order to supplement.  In this additional supplemental pleading, petitioner,
under a subtitle of "Petitioner's Additional Contentions of True Facts of Law to be Added to his Amended Complaint," stated:

> Petitioner's further addition of a showing of the denials of the petitioner's rights of due process and equal
> protection laws . . . i.e., when petitioner Cochran was allowed to plead (guilty) to two illegal sentences, he
> was denied effective assistance of counsel and was denied "due process and equal protection rights" which is
> a true showing of violations of his United States constitutional rights of the 5th and 14th Amendments at a
> most critical stage of his trial.  Also the petitioner contends that if the truth had been made known to him of
> these violations – the outcome of the trial would have been different in total.

(D)     the date on which the factual predicate of the claim or claims presented could
        have been discovered through the exercise of due diligence.

Title 28 U.S.C. § 2244(d)(2) further provides:

> The time during which a properly filed application for State post-conviction or other
> collateral review with respect to the pertinent judgment or claim is pending shall not
> be counted toward any period of limitation under this subsection.

The record does not reflect petitioner's claims involve a constitutional right recognized by

the Supreme Court in the last year and made retroactive to cases on collateral review.  *See* 28

U.S.C. § 2244(d)(1)(C).  Consequently, the statutory time period in this case began to run on "the

date on which the judgment became final by the conclusion of direct review or the expiration of the

time for seeking such review, " *see* 28 U.S.C. § 2244(d)(1)(A), the date on which the impediment to

filing an application created by State action in violation of the Constitution or laws of the United

States is removed, if the applicant was prevented from filing by such State action, 28 U.S.C. §

2244(d)(1)(B), or the date on which the factual predicate of petitioner's claims could have been

discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2244(d)(1)(D).

As discussed in paragraph II, petitioner has set out multiple claims in his federal petition.

The central issue petitioner presents, however, is that his sentences should not have been ordered to

run consecutively and, if they were in fact properly ordered to run consecutively, he was not

adequately admonished by the state trial court or his counsel.

A.
Respondent's Motion to Dismiss

Respondent contends the statute of limitations began on the date the judgment became final.

Respondent states petitioner was sentenced on December 17, 2001, and that the time for seeking

appellate review expired January 16, 2002.  Respondent argues petitioner's federal habeas petition

would have had to have been filed prior to January 16, 2003.

Respondent further argues that since petitioner did not file any state habeas petitions until May 26, 2004, there is no statutory tolling period applicable. Respondent asserts petitioner is not entitled to equitable tolling because petitioner has failed to show any exceptional circumstances. Respondent specifically argues petitioner's inexperience and *pro se* status are not exceptional circumstances, citing *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999).

B.

Petitioner's Position

In his reply to respondent's motion to dismiss, petitioner argues he did not discover the factual predicate of his claims nor could he have discovered such through the exercise of due diligence until September 13, 2006, when he learned, through an I-60 TDC request form, that his sentences were consecutive. Petitioner states he sent such I-60 to the prison unit parole office on August 23, 2006, inquiring whether his sentences were consecutive. Petitioner states all of the TDCJ-CID time sheets he received prior to May 15, 2007, reflected his sentences were concurrent, *i.e.* that he was serving a maximum ten (10) year sentence, but that on May 15, 2007, he received for the first time a time sheet reflecting a fifteen (15) year sentence. Petitioner contends the limitations period should not have begun running prior to August 23, 2006, and that, consequently, his April 10, 2007 federal petition was timely. Attached to his reply to the motion to dismiss were a number of exhibits including, among other things, the I-60 inquiry on August 23, 2006 (Exhibit "E"), a November 9, 2005 inquiry resulting in a response that his sentences were running concurrent (Exhibit "D"), time sheets, including time sheets through June 21, 2006, reflecting concurrent sentences (Exhibit "K"), and a time sheet dated May 15, 2007, reflecting a fifteen (15)

year consecutive sentence (Exhibit "L").

Respondent did not file a reply to petitioner's response. Based upon petitioner's contention that he had continually been advised his sentences were running concurrently and not consecutively, an evidentiary hearing on the issue of limitations was set. Respondent subsequently filed, on June 10, 2008, a reply to petitioner's February 2008 response to the motion to dismiss.[4] In that reply, respondent argued petitioner's claims were still time barred even using a factual predicate date as the date limitations began. Respondent argued petitioner could have, and did actually discover the factual predicate of his claim prior to September 13, 2006, and, in fact, learned of the factual predicate of his claim on December 17, 2001, when he was sentenced to serve consecutive sentences. Respondent argued petitioner confirmed this December 17, 2001 exchange in his 2004 state habeas application and that this information directly contradicts petitioner's claim that he could not have discovered the factual basis of his claim prior to 2006.

Respondent also argued petitioner is not entitled to equitable tolling for several reasons. First, respondent argues petitioner did not diligently pursue his rights and is, therefore, disqualified from any equitable tolling. Respondent contends the TDCJ-CID time calculation sheets reflecting concurrent sentences do not constitute "rare and exceptional" circumstances, and that Cochran did not diligently pursue his rights. Respondent states that even if Cochran understood the time sheets to reflect concurrent sentences, he knew the trial judge had sentenced him to consecutive sentences and, therefore, was aware the time sheets were incorrect. Respondent argues petitioner was aware of TDCJ-CID's mistake and sought to knowingly take advantage of such mistake.

---

[4]Even though the June 10, 2008 reply was not timely, it is discussed because most, if not all, of the arguments in it were advanced at the evidentiary hearing.

C.

Evidentiary Hearing

At the evidentiary hearing held July 8, 2008, petitioner was called as a witness and testified. Petitioner stated he attended school through half of the ninth grade. Petitioner testified he was not aware of and did not understand what the terms "concurrent" or "consecutive" meant, and stated his attorney never used the terms "concurrent" or "consecutive" when explaining the plea agreement. Instead, petitioner's counsel told petitioner that his ten (10) year sentence would "eat up"his five (5) year sentence and that he would serve his sentences simultaneously. He testified that at the time he entered his plea, he believed he was eligible for "shock probation" and understood it was up to the trial court to determine if he would receive such shock probation. Petitioner acknowledged he heard the plea colloquy exchange set forth previously, but that since his attorney did not object or otherwise comment negatively, he believed the proceedings went as expected, *i.e.*, that his sentences were running together. Petitioner testified he did not discuss his sentences with his attorney after December 17, 2001.

After petitioner's arrival at a TDCJ-CID unit, time slips distributed to petitioner as early as January 30, 2002 reflected petitioner's sentences were concurrent sentences, thereby supporting petitioner's understanding that his sentences were not stacked. Petitioner testified that after he had been in TDCJ-CID for approximately six (6) months, he had not been placed on shock probation, and had not received a response from his attorney with regard to his inquiries concerning the possibility of shock probation. As a result, petitioner went to the unit law library in an attempt to research shock probation. The unit law librarian advised he could not answer petitioner's questions concerning shock probation but could relate to him the specifics of his sentences, namely, that he was serving a ten (10) year sentence.

Since he never received shock probation, petitioner testified that in late 2003 or early 2004 (on direct examination), or late 2002 (on cross-examination), he requested his parents obtain copies of his judgments. Petitioner testified that when he received copies of the judgments from his parents, he discovered, for the first time, that the judgment in Cause No. 43,798-E, which assessed the 5-year sentence, stated that the 5-year sentence was cumulative and "begins when the sentence in Cause No. 43,312-E in the 108th District Court of Potter County, Texas is completed." Petitioner explained that although TDCJ-CID was calculating his sentences in what he believed was the proper manner (concurrent), he thought the judgment language was erroneous and needed to be corrected, explaining he did not want what he considered to be an erroneous judgment, even though not being implemented by TDCJ-CID, to cause an impediment to his release to parole, when that date arrived. With another inmate's assistance, petitioner decided to file state habeas corpus petitions to correct the erroneous judgment. Such state habeas petitions were filed May 26, 2004.

During the entire period of time from his arrival at TDCJ-CID and his receipt of the first time slip in January 2002 through the initiating of state habeas proceedings in May 2004, TDCJ-CID time slips provided to petitioner indicated his sentences were being served concurrently. In fact, TDCJ-CID records continued to show petitioner as serving concurrent sentences after the denial of his state habeas petitions on September 14, 2005. As of November 9, 2005, December 13, 2005 and June 21, 2006, TDCJ-CID continued to calculate petitioner's sentences as being concurrent.[5]

Following the denial of his state habeas petition, petitioner did not initiate any further state

---

[5]Respondent contended in their June 10, 2008 reply to petitioner's response that it was unclear whether the time slips petitioner referenced reflected one or more than one sentence. Based upon the time slips provided during the hearing, however, it appears they only reflect the overall length of the sentence or sentences being served. If petitioner's ten (10) year and five (5) year sentences were running concurrently, the time slip would reflect a ten (10) year sentence (or reflect a discharge date for a ten (10) year sentence). If the sentences were running consecutively, the time slip would reflect a fifteen (15) year sentence (or a discharge date of fifteen (15) years).

court filing, nor did he initiate any federal court filing with respect to his sentences. Petitioner explained that information he received from TDCJ-CID after his state habeas petition was denied showed him to be serving concurrent sentences. In late 2005, petitioner contacted an attorney seeking assistance with a pending parole review. Petitioner testified this attorney sent him various information from what he thought was a parole website. In July 2006, petitioner met with a parole representative concerning his impending parole. On July 17, 2006, petitioner's parole representative requested petitioner's commitment data be corrected to reflect his sentences were consecutive sentences.[6] On August 23, 2006, petitioner wrote the parole representative, who was not on-site at petitioner's unit, concerning how to correct erroneous information in his parole folder. When the parole representative returned to petitioner's unit, she advised petitioner they were "trying to get [his] file in order" as, "apparently," his sentences had been ordered to run consecutively by the state trial court.[7] At some point (September 13, 2006 according to petitioner), petitioner received a response to the August 23, 2006 I-60 advising him his sentences were consecutive. (Exhibit E to petitioner's response to the motion to dismiss).

On September 28, 2006, petitioner wrote the Potter County District Clerk's office inquiring whether there was a "cumulative order" entered in his case. On October 19, 2006, the District Clerk advised the Judgment of Conviction was the directive which ran his sentences consecutively. Petitioner testified he requested another time calculation printout during this time, but was denied such a printout even though he believed it had been six (6) months since he last received a time

---

[6]No witness from TDCJ-CID appeared to testify. It appears, however, it was during the review of petitioner's file for possibility of parole that an employee of TDCJ-CID noticed the erroneous calculation, or at least had some question about whether petitioner was supposed to be serving his sentences concurrently or consecutively.

[7]The correction request dated July 17, 2006, in the area specified for "date errors corrected by ID records," reflects handwritten notations of "first 7/25/06" and "2nd request 8/25/06" without further clarification or completion of the form.

slip.[8]

On May 15, 2007, petitioner received for the first time, a time sheet showing his sentences were being calculated as consecutive sentences. From May 15, 2007, through the present, petitioner's TDCJ-CID printouts show his sentences as consecutive sentences.

Respondent developed some of the facts through cross-examination of petitioner. Petitioner acknowledged the plea proceeding exchange and acknowledged filing the state habeas petitions in 2004. No TDCJ-CID witnesses were called by respondent.

Calculation of Limitations Period

If the limitations question is governed by 28 U.S.C. § 2244(d)(1)(A) (the date the judgment became final), then respondent's analysis that the filing period began January 16, 2002 and ended January 16, 2003 is accurate, and petitioner's April 2007 federal petition is untimely. If, on the other hand, limitations is governed by 28 U.S.C. § 2244(d)(1)(B) (the date on which the impediment to filing created by state action is removed), or governed by section 2244(d)(1)(D) (the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence), then petitioner is not necessarily time barred.

According to his testimony at the evidentiary hearing, petitioner had been led to believe by his trial counsel that he would serve his sentences simultaneously. TDCJ-CID time slips continually showed petitioner's sentences as running concurrently until the May 15, 2007 time slip. Petitioner became aware that TDCJ-CID had questions about his sentences sometime between July 17, 2006 and August 23, 2006, and in September 2006 received an I-60 response indicating his sentences were consecutive.

---

[8]Petitioner's unchallenged testimony was that TDCJ-CID will only provide an inmate with a time slip every six (6) months.

Consequently, if petitioner could not discover, through the exercise of due diligence, the factual predicate of his claims until on or after July 17, 2006, then any federal petition would not be due until July 17, 2007 (§ 2244(d)(1)(D)), and Cochran's federal petition filed April 10, 2007, would be timely, without any equitable tolling. Further if the erroneous information furnished by TDCJ-CID to petitioner constituted a state created impediment to filing his petition, then the limitations period would not begin until some point between September 13, 2006 and possibly as late as May 15, 2007, the first time petitioner received a time slip showing he was serving his sentences consecutively. *See* 28 U.S.C. § 2244(d)(1)(B) .

Petitioner's Credibility

If petitioner's testimony is credible, the facts are that petitioner believed he had been sentenced to two (2) sentences, one of ten (10) years and another of five (5) years, which were running concurrently, *i.e.*, that his 10-year sentence would "eat up" his 5-year sentence. Petitioner did not learn, until late 2003 or early 2004, that the language in the judgment called for his 5-year sentence to begin after his 10-year sentence. Even after receipt of this judgment, petitioner still thought he was serving concurrent sentences and that TDCJ-CID's calculations were valid, but thought the judgment contained an error, which he tried to correct through state habeas proceedings. After his attempt failed, TDCJ-CID did not revise its records or calculations of his sentences but continued showing petitioner to be serving concurrent sentences. It was not until July 2006 when petitioner was going through a parole review process that petitioner became aware TDCJ-CID questioned whether his sentences were concurrent or consecutive. Petitioner attempted to obtain information from his parole representative, from the state district clerk, and from TDCJ-CID and was notified on or around September 13, 2006 that his sentences were consecutive. He eventually

obtained a TDCJ-CID time slip in May 2007.

The Court finds petitioner's testimony credible. The undersigned does not reach this conclusion lightly however. Assessing the credibility of a witness is an inexact science, and some of the facts identified by respondent, *i.e.*, the December 17, 2001 plea proceedings and the May 2004 state habeas filings, are important. Even though these acts may initially call into question whether petitioner's testimony is credible, such facts do not automatically render the testimony unreliable. Instead, these incidents are merely factors to consider in assessing petitioner's credibility. Petitioner did not dispute these facts but offered reasonable explanations. He did not dispute the plea transcript. Instead, he explained he did not know what concurrent and cumulative meant. Petitioner admitted he eventually obtained copies of the judgment showing his five (5) year sentence "begins when the sentence . . . is completed," and that he challenged this judgment in his 2004 state habeas action even though, according to TDCJ-CID, he was serving concurrent sentences. Petitioner testified at length explaining what he did and did not do, and when and why he took action or did not take action.

Further, as petitioner stated, he is unsophisticated and has a limited education, not having completed the ninth grade. There is no basis not to believe his testimony regarding his unfamiliarity and lack of comprehension of the terms "concurrent" and "consecutive." While these terms may be common to persons knowledgeable and/or experienced in law or criminal justice issues, or whose educational level is more than the 8th or 9th grade level, these are not commonly used terms.

In addition, the plea transcript shows the plea proceedings were relatively brief, particularly the sentencing phase. There was no meaningful discussion of how the sentences would run. The trial judge was not aware the sentences would be consecutive until the end of the proceedings,

stating he assumed the sentences would be concurrent.  The Court then simply stated "so ordered" after the prosecutor advised the sentences must be consecutive.  No statement was made reciting the language of the judgment assessing the five (5) year sentence.   Petitioner's final statement at the plea and sentencing was to thank the court.  If petitioner was, as he testified, under the belief his ten (10) year sentence would "eat up" his five (5) year sentence, then his statement of "thank you" to the trial court is logical and confirms his unfamiliarity with the terms concurrent and consecutive. If, on the other hand, petitioner understood those terms and knew he was being given consecutive or stacked sentences contrary to what he had been advised, his comment does not make sense. Further, if petitioner has been untruthful and was always aware his sentences would be stacked, he would have no reason to have engaged in such a circuitous route in an attempt to challenge these sentences.  That scenario is not only illogical, it would require much more sophistication than petitioner appears capable.  It simply was not unreasonable for petitioner to believe his sentences were not stacked since all information received from TDCJ-CID from January 2002 until at least July/August 2006 reflected concurrent sentences.  Petitioner was credible.

Respondent's strongest argument is that petitioner was aware of his claims when he filed his state habeas in 2004 and should have continued his challenge to the judgment by filing federal habeas following the denial of his state habeas.  The Court must consider, however, petitioner's knowledge of the facts and the reasonableness of petitioner's actions in 2004, and not consider the issue based upon what was known by 2007.  There is no evidence petitioner, in 2004-2005, was aware of or appreciated that the language of the judgment would control versus TDCJ-CID's interpretation or calculation.  A criminal defendant such as petitioner generally considers the state, whether denominated as the state trial court, the state appellate court, or the state prison (TDCJ-CID), as the "state."  Such is not unreasonable.  Consequently, it was reasonable for petitioner not

to continue challenging a sentence he considered was being treated as correct by TDCJ-CID.

Lack of education, ignorance of the law, and even illiteracy do not merit equitable tolling. *See Felder v. Johnson*, 204 F.3d 168, 172-73 (5th Cir.), *cert. den.*, 531 U.S. 1035, 21 S.Ct. 622, 148 L.Ed.2d 532 (2000). Ignorance of the law, illiteracy and *pro se* status are all insufficient to toll the statute of limitations. *See Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir.), *cert. den.*, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 389 (1999). Consequently, petitioner would be time barred if his failure to discover the basis of his claims were due only to his ignorance of the law and/or *pro se* status. In this case, petitioner's inability to discover or be able to discover the basis of his claims or cause of action was also based upon the documentation he received, and continued to receive, from the state (TDCJ-CID) for over five (5) years. The information received from the state corroborated petitioner's understanding of how his sentences had been assessed and how they were being served. As set forth above, petitioner's testimony was that after the plea hearing he thought his sentences were being calculated correctly. This fact, coupled with the fact that he received erroneous information from TDCJ-CID, adds a critical component to any analysis of whether lack of sophistication and limited educational ability can be considered on the issue of limitations and this additional factor serves to distinguish this case.

Further, the Court has also considered not only petitioner's testimony, but has considered what is not in evidence. Respondent offered no evidence from TDCJ-CID or otherwise that miscalculations of sentences are not rare and exceptional circumstances. Nor was there any evidence as to what procedures may have been available to petitioner within TDCJ-CID to make further inquiries following the denial of his state habeas petition. Without such evidence, the undersigned is unwilling to <u>assume</u> procedures were available within TDCJ-CID, which would allow petitioner to obtain sufficient additional facts or knowledge regarding what he considered to

be an erroneous judgment after the denial of his state habeas petition. While the undersigned has some knowledge, from the volume of *pro se* cases handled by this Court, that there are procedures available in TDCJ-CID for inmates to request information, the undersigned is also aware that requests by inmates for information are not always encouraged nor do they always receive an adequate response. It would be unfair to petitioner for the Court to assume, without having received any evidence, that there were or may have been avenues available to petitioner for further inquiry, without giving petitioner an opportunity to explain whether he agreed such avenues were available, did not agree, or have an opportunity to explain why he did not avail himself of such.

Respondent cites *Owens v. Boyd*, 235 F.3d 356 (7th Cir. 2000), for its holding that limitations begins when a prisoner "could have discovered" his claim and not when he actually discovers his claim.

While a close question is presented, particularly as to the state habeas filing in 2004, *Owens v. Boyd*, at 360, further holds that tolling may be available when some impediment of a variety not covered in § 2244(d)(1) prevents the filing of a federal collateral attack. That is precisely the case here. TDCJ-CID's erroneous calculations not only misled petitioner, but put petitioner's case in a completely different posture. In 2004-2005, petitioner was suffering no prejudice and any claim presented to the federal court prior to 2006 would have been an attempt to correct a state judgment, *i.e.*, an issue of state law not cognizable on federal habeas. Further, petitioner could not submit a non-frivolous claim in federal court prior to 2006 because prior to 2006 he was serving the sentences he fully understood he was obligated by his plea bargain to serve, *i.e.*, concurrent sentences and was suffering no harm.

The state created impediment in this case was at least as serious as the impediment in *Egerton v. Cockrell*, 334 F.3d 443, 439 (5th Cir. 2003), where the failure by the state to have a copy

of the AEDPA available in the prison library was found sufficient for tolling purposes. Here TDCJ-CID's providing of erroneous information constituted an act of commission as opposed to the act of omission in *Egerton*.

Therefore, it is the finding of the undersigned that under particular facts and circumstances of this case, the limitation period does not run from January 16, 2002, the date on which the judgment became final by the expiration of time for seeking direct review (28 U.S.C. § 2241(d)(1)(A)). Instead, the limitation period in this case began to run from, at the earliest, July 17, 2006, the date petitioner learned that TDCJ-CID questioned whether his sentences were concurrent or consecutive. This is the date on which the factual predicate of petitioner's claim was discovered or could have been discovered through the exercise of due diligence (28 U.S.C. § 2244(d)(1)(D)). An inescapable fact to this conclusion is that if petitioner, as argued by respondent, was aware in 2001 of his claims, he would have had no motive or reason to delay presentation of his claims. Similarly, there is simply no reason for him not to have been proceeded to federal court in 2005 after the denial of his first state writ unless he was truly of the opinion that TDCJ-CID was calculating his sentences correctly as concurrent sentences. Any argument that petitioner always knew his sentences should be consecutive, considered TDCJ-CID's calculations as concurrent sentences erroneous and merely attempted to "lie behind the log," in the hopes that TDCJ-CID would not discover the error, is rebutted by the fact that petitioner would have had no purpose or reason to file the state writ of habeas corpus in 2004, alerting state authorities, or potentially alerting the state authorities, to the error.

Even if the undersigned is incorrect with respect to the statutory limitations period beginning, under § 2244(d)(1)(D), on July 17, 2006, and it is determined that is not the date when

petitioner learned of the factual predicate or could have discovered the factual predicate of his claims through the exercise of due diligence, the undersigned finds the state action by TDCJ-CID from January 2002 to September 13, 2006, of misadvising petitioner that his sentences were being served concurrently rather than consecutively entitles petitioner to application of § 2244(d)(1)(B). The Court does not find that this misinformation by TDCJ-CID was done intentionally or purposefully. The fact is that the state gave petitioner erroneous information and petitioner relied upon it. Petitioner is not at fault in this regard and did nothing to cause TDCJ-CID to miscalculate the manner in which his sentences were being served. Petitioner had no viable claim to present prior to September 2006, when TDCJ-CID corrected its records thereby removing the impediment.

Finally, if neither § 2244(d)(1)(B) or (d)(1)(D) apply, then it is the finding of the undersigned that petitioner, for the reasons set forth previously, is entitled to equitable tolling until at least July 2006.

For all of the reasons stated above, it is the opinion and finding of the undersigned United States Magistrate that the motion to dismiss filed by respondent should be, in all things, DENIED.

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the motion to dismiss filed by respondent NATHANIEL QUARTERMAN be DENIED.

## V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 5<u>th</u> day of September 2008.



_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).